UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN BENJAMIN SILVERSTEIN,

              Plaintiff,

  - against -

MASSAPEQUA UNION FREE SCHOOL DISTRICT,
NASSU COUNTY BOARD OF COOPERATIVE
  EDUCATION SERVICES, and
CONTEMPORARY COMPUTER SERVICE, INC.,

              Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-4360 (RRM) (AKT)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff John Benjamin Silverstein brings this action against the Massapequa Union Free School District (the "District"), the Nassau County Board of Cooperative Education Services ("BOCES"), and Contemporary Computer Service, Inc. ("CCSI") (collectively, "Defendants"), principally alleging an FLSA claim, unspecified employment discrimination and other federal claims, and numerous state-law claims. All three Defendants now move to dismiss.

For the reasons set forth below, plaintiff will be granted an opportunity to re-plead his federal claims consistent with the issues discussed in this Memorandum and Order. Should defendants wish to renew their motions directed at any amended complaint, they shall have the opportunity to so do after a seeking a pre-motion conference pursuant to the Court's Individual Motion Practices and Rules.

    **I.**    **Background**

The following facts are drawn directly from plaintiff's verified complaint, and must be assumed to be true for purposes of Defendants' motions. In 2001, Deputy Superintendent Sulc (presumably, a District employee) hired Silverstein as a "Network Systems Engineer" as part of

an effort to "get the District up to date with current technology and grow and expand the District's technology footprint." (Compl. at ¶¶ 16–17.) According to Silverstein, Sulc informed him that he would be an employee of the District and promised him pension and healthcare benefits, as well as sick leave and vacation time. (*Id.* at ¶¶ 7, 25.) He was provided a cell phone and a computer by the District and given an office in the District's administration building. (*Id.* at ¶ 19.) Silverstein believed that he was an employee of the District. (*Id.* at ¶ 16.)

Silverstein reported his hours on timesheets that were provided by the District and which he submitted to the District on a weekly basis. (*Id.* at ¶ 21.) Although Silverstein worked over 40 hours a week, he never received overtime compensation from the District or any other entity. (*Id.* at ¶ 20.) However, he received regular raises and never received a negative performance review. (*Id.* at ¶ 22.)

From 2001 until sometime in 2007, Silverstein's work was supervised by Michael Pavlides, a District employee. (*Id.* at ¶ 19.) For the first five years of this period, Silverstein was paid directly by the District. (*Id.* at ¶ 19.) However, after five years, Pavlides informed Silverstein that he had to "incorporate" if he "wished to continue to be treated as an employee." (*Id.* at ¶¶ 26–27.) Pavlides also informed Silverstein that he would now receive his paychecks from BOCES, explaining that auditors had recommended the changes because the District was eligible for state reimbursement if Silverstein was paid by BOCES. (*Id.* at ¶¶ 26–27, 31.) According to Silverstein, Pavlides led him to believe that he was, and would continue to be, an employee of the District. (*Id.* at ¶ 31.)

Silverstein "begrudgingly complied," but only because he feared that he would be fired if he did not. (*Id.* at ¶ 30.) Silverstein "did not receive any of the proper documents or notifications required by the Civil Service Laws regarding the transfer of a position from one

2

State agency to another." (*Id.* at ¶ 30.)  In addition, Defendants did not properly withhold taxes from Silverstein's paychecks.  (*Id.* at ¶ 33.)

Sometime in 2007, Robert Schilling replaced Pavlides as Silverstein's supervisor.  (*Id.* at ¶ 34.)  On numerous occasions, Schilling "insinuated" that he favored younger workers.  (*Id.* at ¶ 35.)  He assigned Silverstein "low level projects," which had not previously been a normal part of Silverstein's duties.  (*Id.* at ¶ 35.)

In June 2014, Silverstein notified Schilling that he had cancer.  (*Id.* at ¶¶ 36, 54.)  In a subsequent meeting, Schilling told Silverstein that he could only keep his job if he took a $40,000 pay cut.  (*Id.* at ¶¶ 36, 54.)  Knowing he needed to maintain his health insurance, Silverstein agreed.  (*Id.* at ¶ 36.)  In July 2015, Schilling reduced Silverstein's salary by an additional $10,000.  (*Id.* at ¶¶ 37, 54.)  Finally, on January 8, 2016, Schilling terminated Silverstein.  (*Id.* at ¶¶ 38, 40.)  Silverstein, who had never received a "formal negative performance review," was never warned that his job was in jeopardy or given a hearing, an appeal, or any of the procedural protections to which he was entitled under the Civil Service Laws.  (*Id.* at ¶¶ 38, 40.)  Schilling then immediately replaced Silverstein with "an employee half his age."  (*Id.* at ¶ 55.)  After he was terminated, Silverstein learned that he "was never added to, and/or received any of the District's employee benefits including … pension, healthcare, sick and vacation time, and 401k" benefits.  (*Id.* at ¶ 25.)

## II. The Verified Complaint

On or about March 28, 2018, commenced this action in Nassau County Supreme Court against the District, BOCES, and CCSI.  The action was removed to this Court on August 1, 2018.  The operative pleading here is the Verified Complaint (Doc. No. 1-1) which was originally filed in the state court action and which has never been amended.  In it, plaintiff

alleges, on information and belief, that Defendants intentionally misclassified him as an "independent contractor" to "avoid the proper tax withholdings" and to defraud New York State of unemployment and workers compensation contributions. (*Id.* at ¶¶ 42–43.) He also alleges, again on information and belief, that Defendants defrauded him, alleging that he was wrongly denied unemployment and workers compensation benefits and implying that he paid more in taxes because he was classified as a "1099" independent contractor and not a District employee. (*Id.* at ¶¶ 42–44.)

Although the Verified Complaint names CCSI as a defendant, it contains virtually no non-conclusory, factual allegations concerning this defendant other than the allegation that CCSI "is a domestic Corporation that does business in New York." (*Id.* at ¶ 10.) The pleading alleges only that Silverstein "never enter[ed] into a written contract with CCSI or BOCES for his alleged employment and/or independent contracting services," and "never had any contact with anyone from BOCES or CCSI" after he began to receive paychecks from BOCES. (*Id.* at ¶¶ 31–32.) The Verified Complaint nonetheless alleges that CCSI aided and abetted and/or conspired with co-defendants BOCES and the District to conceal Silverstein's true employment status. (*Id.* at ¶ 29.)

The pleading alleges nine causes of action, only the first of which arguably alleges a violation of federal law. The first cause of action states that it "arises from Defendants' willful violation of the Fair Labor Standards Act … and the New York Labor Law … for failure to pay overtime Compensation to Plaintiff." (*Id.* at ¶ 45.) The first cause of action alleges that Silverstein "consistently worked over forty (40) hour work weeks," but never "received any overtime pay during his time as an employee of the District." (*Id.* at ¶ 46.) Silverstein claims the "District knowingly violated the Fair Labor Standards Act, because Plaintiff's position is a non-

exempt position" and because the District, which received his daily time sheets, was aware he was working overtime. (*Id.*)

The second cause of action sounds in employment discrimination but does not specifically allege a violation of any federal employment discrimination statute. Rather, this cause of action alleges, upon information and belief, that Silverstein "was discriminated against by his direct superior's [sic] because of his disability and age in violation of the Equality Act and the Equal Employment Opportunity Commission." (*Id.* at ¶ 53.) However, the Verified Complaint does not provide a citation for the "Equality Act," and does not allege Silverstein's age. While the pleading does allege that Silverstein suffered from some unspecified form of cancer, it does not allege that his illness rendered him "disabled" as defined in section 3(1) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1).

None of the seven remaining causes of action specifically alleges a federal claim, though three allude to violations of unspecified federal laws. The third cause of action sounds in ERISA, alleging that Silverstein has never "received the proper benefits of a District employee, including but not limited to: pension, health care, vacation and sick leave, 401k, and other benefits provided to all employees of the District." (*Id.* at ¶ 59.) The fourth cause of action principally alleges that Defendants breached their "fiduciary duty to comply with [their] own policies and laws," (*id.* at ¶ 61), but also alleges that Silverstein was "never provided any documents in violation of State and Federal Education laws …." (*Id.* at ¶ 63.) The sixth cause of action alleges that the District violated "state and federal employment law" and "state and federal tax law" by terminating him, (*id.* at ¶¶ 70–71), but does not specify the federal laws which were allegedly violated.

The four remaining causes of action allege only state-law claims. The fifth cause of action alleges that the Defendants "intentionally or negligently inflicted emotional distress" on Silverstein. (*Id.* at ¶ 66.) The seventh cause of action alleges the breach of some unspecified "covenant." (*Id.* at ¶ 74.) The eighth cause of action alleges conversion of Silverstein's overtime wages and "earned benefits," (*id.* at ¶ 77), while the ninth cause of action alleges Silverstein was fraudulently induced to accept a position with Defendants. Silverstein seeks to recover for "lost wages, back pay, lost benefits, [and] overtime," and alleges that he is entitled to "liquidated damages, treble damages, … and Punitive damages," in addition to the compensatory damages. (*Id.* at p. 21.)

### III. The Motions to Dismiss

All three Defendants now move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). In its Memorandum of Law in Support of the District's Motion to Dismiss (Doc. No. 33), the District argues, among other things, that the FLSA, federal employment discrimination claims, and state-law claims against the District are time-barred; that computer professionals are not covered by the FLSA's overtime provisions, and that because plaintiff incorporated, he does not meet the FLSA's definition of an employee; that plaintiff failed to exhaust his administrative remedies before bringing the employment discrimination claims; and that the Verified Complaint fails to state a claim against the District. CCSI makes the many of same arguments in its Memorandum of Law in Support of Defendant CCSI's Motion to Dismiss Plaintiff's Complaint (Doc. No. 44), as does BOCES in its Memorandum of Law in Support of its Motion to Dismiss (Doc. No. 36). However, instead of arguing that plaintiff does not meet the FLSA's definition of an employee, CCSI and BOCES argue that the FLSA claim against them fails because plaintiff has not alleged that they are his employer or a "joint employer."

Plaintiff has responded to these motions with a nine-page Affirmation in Opposition to Defendants Order to Show Cause (Doc. No. 59) from counsel, which attaches several exhibits. In the first six pages of the affirmation, plaintiff's counsel largely repeats the allegations in the Verified Complaint. However, counsel states that plaintiff has been receiving his paychecks from CCSI, not BOCES. The exhibits attached to the affirmation – which cannot be considered upon the motions to dismiss as they are outside of the pleadings in this case and aver facts that are not within the personal knowledge of plaintiff's counsel – also suggest facts that are not alleged in the Verified Complaint: namely, that plaintiff has been invoicing the District as "Bensil Enterprises," a "vendor"; that CCSI is paying Bensil, not plaintiff directly; and that CCSI has been reporting plaintiff/Bensil's income to the IRS on a 1099-MISC since at least 2010. The affirmation addresses only two of the arguments raised by defendants: 1) that the Verified Complaint is "vague and lacking in detail" and 2) that defendants are not his employer. With respect to the latter, the affirmation appears to imply that plaintiff has no idea who his employer actually is, stating: "[T]o state who's employee or employer or that they do not meet standards after having provided he [sic] district one of it's [sic] contractors to improperly list Plaintiff as his employee makes this argument premature." (Doc. No. 59, at 8.)

### IV. Discussion

#### A. The FLSA Claim

As noted above, the only claim arguably focused on federal law is brought under the FLSA. For the reasons discussed below, plaintiff will be granted leave to amend this claim to address concerns properly raised by defendants.

##### 1. Failure to State a Claim

Defendants are correct in pointing out that the Verified Complaint does not currently state an FLSA claim. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must

7

sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). The Second Circuit has made it clear that a plaintiff is "required to do more than repeat the language of the statute." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013). For example, it is insufficient for a plaintiff to allege "that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation." *Id.*

In this case, the Verified Complaint alleges only that plaintiff has "consistently worked over forty (40) hour work weeks," but has "not received any overtime pay during his time as an employee of the District." (Compl. at ¶ 45.) This allegation closely resembles the allegation found insufficient in *Dejesus*. Plaintiff must replead in order to set out a valid claim. In so doing, plaintiff must also address the following issues as well.

2. Employer/Employee

CCSI argues that it is not plaintiff's "employer" as defined in 29 U.S.C. § 203(d), while BOCES argues that it is not a "joint employer," as defined in case law. Similarly, the District argues that because plaintiff implies that he incorporated at Pavlides's insistence, he does not meet the FLSA's definition of an employee: "an individual employed by an employer." (Doc. No. 33 at 11) (quoting 29 U.S.C. § 203(e)(1)). However, as discussed below, these arguments are not cognizable on a motion to dismiss because they rely on facts outside the pleadings and ignore plaintiff's theory that he remained an employee of the District until terminated.

First, the complaint alleges no facts from which the Court can conclude whether or not CCSI is plaintiff's employer. Indeed, as noted above, the complaint alleges no facts at all regarding CCSI. Given that plaintiff is accorded leave to amend his complaint in other respects,

the Court dismisses CCSI without prejudice to amending the complaint to state a claim against CCSI.

Second, BOCES's argument essentially casts on plaintiff the duty to plead all the facts necessary to establish that BOCES is a "joint employer." On a motion to dismiss, the question is whether plaintiff has pled facts that establish BOCES is *not* a joint employer. Plaintiff, who alleges facts suggesting that the District and BOCES conspired to fraudulently make plaintiff appear to be an independent contractor of BOCES, has not alleged facts from which one can determine whether BOCES had formal or functional control. Moreover, since the whole goal of the alleged scam was to confuse people as to who was plaintiff's true employer, it would by inequitable to dismiss plaintiff's FLSA claim simply because, at this juncture, he is unsure which entity employed him.

Third, the District is engaging in a selective reading of the complaint. While plaintiff implies that he "incorporated" at Pavlides's insistence to create the illusion that he was not a District employee, he is clearly alleging that he remained a District employee, even though he may have been paid by checks sent by BOCES to his corporation. In light of plaintiff's allegations that the District conspired to disguise the employer-employee relationship, the Court cannot credit the District's claims that plaintiff was actually a corporation and an independent contractor.

3. Exemption

The FLSA has specifically exempts from its coverage:

> any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is—
> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and
> who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17). "[A]n employee's job *duties*, not his job *title*, determine whether the exemption applies." *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM)(DCF), 2010 WL 1379778, at *16 (S.D.N.Y. Mar. 26, 2010) (emphasis in original) (citing 29 C.F.R. § 541.400). Thus, "[w]hether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description." *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997).

The complaint in this case alleges little more than plaintiff's title: "Network Systems Engineer." Although the pleading alleges that he contributed to an effort to "get the District up to date with current technology and grow and expand the District's technology footprint," (Compl. at ¶¶ 16–17), it does not describe his activities with sufficient specificity to allow us to determine whether he fits within one or more of the categories specified in the statute. Moreover, while the allegations regarding time sheets suggest that plaintiff is compensated on an hourly basis, there are no allegations regarding his hourly wage.[1] Given the fact-intensive nature of the exempt employee analysis, the Court cannot determine at this juncture whether defendant falls under the FLSA exemption.

---

[1] According to exhibits to plaintiff's affirmation, plaintiff was billing $381.36 per day. While this suggests he was making over $27.63 per hour, the Court cannot consider these exhibits on a 12(b)(6) motion.

4. <u>Timeliness</u>

"The FLSA provides a two-year statute of limitations on actions to enforce its provisions unless the violation was willful, in which case the limitations period is three years." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 461 (E.D.N.Y. 2014) (citing 29 U.S.C. § 255(a)). Defendants' statute of limitations argument is predicated on the two-year limitation being applicable. Defendants reason that since this action was filed in March 2018, any FLSA violations which occurred before March 2016 would be time-barred. Since plaintiff was terminated in January 2016, Defendants argue that all his FLSA claims must be untimely.

Defendants' argument misses a key allegation: the Verified Complaint expressly alleges a "willful violation." (Compl. at ¶ 45.) Defendants urge the Court to disregard this, asserting that this allegation is conclusory. In support of this argument, they cite to cases which hold that such "conclusory allegations" are insufficient to establish that the three-year limitations period applies. However, the cases to which they cite involve motions for summary judgment or default judgment, where the burden was on the plaintiff to establish a willful violation.

Here, plaintiff does not yet have any such burden. Statute of limitations is an affirmative defense, and dismissal ordinarily can be based on an affirmative defense only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements. *See Shields v. United States Postal Serv.*, 729 F. App'x 662, 663 (10th Cir. 2018) (summary order). A plaintiff has no burden to allege willfulness in anticipation of a limitations defense, much less plead facts supporting that allegation. *See id*. Accordingly, even if the complaint did not specifically allege a willful violation of the FLSA – which it does – the Court could not dismiss on the grounds urged by Defendants. There are simply no facts alleged in the complaint that would permit the Court to find a lack of willfulness.

B. Ostensible Employment Discrimination Claims

In his second cause of action, plaintiff attempts to allege ADA and ADEA claims. He has not succeeded. Despite being drafted by an attorney, the Verified Complaint mentions only the "Equality Act," not any federal employment discrimination statute.[2] (Compl. at ¶ 53.) Equally unclear is plaintiff's allegation regarding discrimination "in violation of … the Equal Employment Opportunity Commission." (*Id*.) This cause of action is dismissed with leave to replead.

In addition, the Court notes that, even if properly pled, such claim(s) may ultimately fail because, as defendants suggest, plaintiff may not have exhausted his administrative remedies. However, the failure to exhaust argument cannot be raised on a motion to dismiss unless the complaint alleges facts suggesting a failure to exhaust, and no such facts have been pled here.

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (holding that timing requirements applicable to Title VII suits against the federal government are similarly subject to equitable tolling). "[T]he burden of pleading and proving … exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). Since it is an affirmative defense, exhaustion "can only be a proper basis for a motion to dismiss under Rule 12(b)(6) if failure to

---

[2] The House passed an Equality Act to May 17, 2019 (H.R. 5), which, if enacted, would prohibit discrimination "on the basis of the sex, sexual orientation, gender identity, or pregnancy, childbirth, or a related medical condition of an individual, as well as because of sex-based stereotypes." It is unlikely that plaintiff is referring to this proposed legislation. One of the defendants suggests that plaintiff is referring to the Equality Act 2010 – the British analogue to the ADA, the NYSHRL, and the NYCHRL. *See Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 517 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014).

exhaust appears on the face of the complaint." *Frederic v. NFC Amenity Mgmt.*, No. 17-CV-5769 (AJN), 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018).

Here, the Verified Complaint does not allege facts suggesting a failure to exhaust. "[A]n affirmative defense relying on evidence beyond the pleadings is not suitable for resolution under Rule 12(b)(6)." *Id.* Should plaintiff properly plead any such claims in an amended complaint, the Court will address exhaustion if and when appropriate.

C. Other Federal Claims

As noted above, the complaint alludes to other federal claims. Plaintiff may be attempting to advance an ERISA claim in the third cause of action. The fourth cause of action alleges that Silverstein was "never provided any documents in violation … Federal Education laws," (*id.* at ¶ 63), and the sixth cause of action alleges that the District violated "federal employment law" and "federal tax law" by terminating him, (*id.* at ¶¶ 70–71). However, none of these vague allusions come close to meeting Rule 8's notice pleading requirements. As such, these causes of action are dismissed with leave to replead.

D. State Law Claims

The Court will not rule on the sufficiency of any state law claims pending determination of whether plaintiff can plead any federal claims. Should plaintiff fail to so do, the Court may decline to exercise supplemental jurisdiction and dismiss the state-law claims without prejudice to raising them in state court.

CONCLUSION

Given the deficiencies in the Verified Complaint, plaintiff will be given an opportunity to re-plead his federal claims consistent with the issues discussed in this Memorandum and Order. Plaintiff shall file any amended complaint no later than October 18, 2019. Should defendants

wish to renew their motions directed at any amended complaint, they shall have the opportunity to so do after a seeking a pre-motion conference pursuant to the Court's Individual Motion Practices and Rules.   Discovery is stayed until further Order of the Court.

                                    SO ORDERED.

Dated:  Brooklyn, New York                     *Roslynn R. Mauskopf*
         September 30, 2019

                                            _____
                                            ROSLYNN R. MAUSKOPF
                                            United States District Judge